UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CHARLES HAWKINS, #1019653,

    Petitioner,

v.                                                ACTION NO. 2:16cv720

HAROLD W. CLARKE,
Director, V.D.O.C.,

    Respondent.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Charles Hawkins' *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and the respondent's motion to dismiss. This matter was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. For the following reasons, the Court **RECOMMENDS** that respondent's motion to dismiss, ECF No. 5, be **GRANTED**.

### I.    STATEMENT OF THE CASE

Charles Hawkins ("Hawkins") is an inmate currently confined at the Deerfield Correctional Center of the Virginia Department of Corrections. ECF No. 1 at 1. Hawkins waived his right to a trial by jury and, following a bench trial, was convicted in the Circuit Court for the City of Portsmouth on February 14, 2013, ECF No. 1 at 22, of one count of malicious wounding, one count of using a firearm during the commission of a felony, and one count of

possession of a firearm by a convicted felon.[1] ECF No. 7-1. On May 22, 2013, the circuit court sentenced Hawkins to 18 years in prison with 3 years suspended. *Id.*

Hawkins appealed his conviction to the Court of Appeals of Virginia. ECF No. 7-2. The court of appeals summarized the evidence in the case as follows:

> [D]uring the early morning hours on January 27, 2012, [Hawkins] was at a gathering with the victim, [Shawn Moye, or "Moye"], a female, [Tiffany Gatson, or "Gatson"], and another male, ["Cousin V"], when an altercation began. [Moye] attempted to intervene, and [Cousin V] produced a gun. As [Moye] and others were leaving, [Cousin V] threatened [Moye] with the weapon. [Moye] ran from the scene, heard a gunshot, and realized that he had been shot in the back.
>
> [Gatson] testified that she saw [Hawkins] with a gun as she and [Moye] were leaving the residence. [Cousin V] instructed [Hawkins] to shoot, and [Hawkins] complied. [Gatson] saw [Hawkins] fire the weapon at [Moye].
>
> The police detective who investigated the shooting explained that [Moye] was initially uncooperative with the police. [Gatson] was willing to speak with the officers, and, shortly after the incident, she specifically stated that it was a man with [Cousin V] who shot [Moye]. She later identified the shooter as [Hawkins]. However, in her 911 call, [Gatson] seemed to suggest that [Cousin V] had shot [Moye].
>
> Without objection, the Commonwealth introduced a written statement from [Moye], produced approximately two months after the shooting. In the statement, [Moye] recounted the events of the night and stated that [Hawkins] was the person who shot him.

ECF No. 7-2.

Hawkins' appeal argued first, "'[t]he trial court erred in overruling [his] motions to strike and in finding the evidence sufficient to prove that [he] was the person who shot [the victim],'" and second, that "'[t]he trial court erred in allowing the Commonwealth to introduce the written statement given by the victim to the police nearly two months after the offenses occurred.'" *Id.* at 1. On December 30, 2013, the court of appeals rejected both arguments, finding the "first

---

[1] Two other counts against Hawkins were dismissed.

2

argument without merit and [the] second argument waived." *Id.* Hawkins filed a request for a three-judge panel, ECF No. 1 at 23, and, on April 14, 2014, a three-judge panel of the court of appeals again denied Hawkins' petition for appeal. ECF No. 7-2 at 8. On October 31, 2014, the Supreme Court of Virginia refused Hawkins' appeal. ECF No. 7-3.

Hawkins filed a petition for a writ of habeas corpus in the Supreme Court of Virginia on March 30, 2016. ECF No. 7-4. On June 17, 2016, the Supreme Court of Virginia dismissed the habeas petition because it was not filed within one year from that court's refusal of Hawkins' appeal on October 31, 2014, and was thus untimely under Va. Code Ann. § 8.01-654(A)(2).[2] *Id.*

Hawkins certified that he placed a federal petition for a writ of habeas corpus in the prison mailing system on November 21, 2016. ECF No. 1 at 15. That petition was filed in this Court on December 16, 2016, raising 19 different grounds supporting issuance of the writ.[3] ECF No. 1 at 1, 35–56. On April 12, 2017, the respondent filed an answer to the petition pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and a motion to dismiss the petition, along with a supporting memorandum.[4] ECF Nos. 5–7. On May 30, 2017, after receiving an extension of time, ECF No. 10, Hawkins filed a response in opposition to the motion to dismiss. ECF No. 12.

---

[2] Section 8.01-654(A)(2) provides:

> A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

Va. Code Ann. § 8.01-654(A)(2).

[3] The 19 grounds were the same as in the state petition.

[4] The motion to dismiss included a separately filed notice, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K), providing Hawkins with notice of how to timely respond thereto and the potential consequences of failing to do so. ECF No. 8.

## II. ANALYSIS

### A. *Statute of Limitations*

Respondent first argues that Hawkins' claims are barred by the applicable statute of limitations. ECF No. 7 at 5–7. Hawkins' claims are governed by 28 U.S.C. § 2244(d), part of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which provides, in pertinent part, that a one-year statute of limitations begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). This time period tolls when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Hawkins' petition was untimely filed. The Supreme Court of Virginia refused Hawkins' direct appeal on October 31, 2014. ECF No. 7-3. Hawkins had 90 days from entry of that final judgment to file a writ of certiorari to the United States Supreme Court. *See* Sup. Ct. R. 13(1). He did not do so, and his conviction thus became final on January 29, 2015. Under section 2244(d), he had until January 29, 2016 to file his federal habeas petition. *See* 28 U.S.C. § 2244(d)(1)(A). Instead, he placed his petition in the prison mailing system on November 21, 2016, over nine months late. ECF No. 1 at 15; *see Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991) (a filing by an unrepresented prisoner is deemed submitted when it is delivered to prison officials for mailing).

Hawkins is not entitled to the statutory tolling provision of 28 U.S.C. § 2244(d)(2), because his state habeas petition was not "a properly filed application for State . . . review" within the meaning of that code provision. "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*,

4

544 U.S. 408, 414 (2005); *see also Patterson v. Dir., Va. Dept. of Corr.*, 36 F. Supp. 2d 317, 319–20 (E.D. Va. 1999) (holding that a properly filed petition is "'one submitted according to the state's procedural requirements, such as rules governing time and place of filing'") (quoting *Lovasz v. Vaughn*, 134 F.3d 146, 147 (3d Cir. 1998)). Here, the Supreme Court of Virginia refused Hawkins' petition as untimely pursuant to state law, specifically Va. Code Ann. § 8.01-654(A)(2). Thus, Hawkins' state petition was improper under state procedural law and does not toll the federal statute of limitations.[5]

Hawkins attempts to overcome his late filing by arguing that he is making a gateway claim of actual innocence under *Schlup v. Delo*, 513 U.S. 298 (1995). The Supreme Court has recognized that "actual innocence, if proved, serves as a gateway through which a prisoner may pass" to bring claims after the statute of limitations expires. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). This exception to the statute of limitations "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin*, 133 S. Ct. at 1933 (quoting *Schlup*, 513 U.S. at 329). More specifically, the exception requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. A habeas petitioner's "'[l]ate-offered' testimony is not 'new evidence' if the substance of such testimony was available at [the petitioner's trial]." *Lewis v. Clarke*, No. 2:13cv549, 2014 WL 2090563, at *6 (E.D. Va. May 19, 2014) (citing *Hubbard v. Pinchak*, 378 F.3d 333, 340–41 (3d Cir. 2004)). Nor is evidence which

---

[5] Even if Hawkins were entitled to statutory tolling, his habeas petition would still be untimely. Hawkins' habeas petition was in consideration in the state court from March 30, 2016 until June 17, 2016. ECF No. 7-4. If such a petition were properly filed, this would have tolled the statute of limitations for 79 days, meaning that Hawkins would have had until April 18, 2016 to file his federal petition. Hawkins' petition, however, was filed on November 21, 2016. ECF No. 1 at 15.

is a mere "repackaging of the record as presented at trial" considered "new" evidence which may properly support a claim of actual innocence. *Hubbard*, 378 F.3d at 341. If the petitioner provides the court with reliable, newly discovered evidence, then the court weighs the new evidence in light of the previous evidence, whether admissible under the rules of evidence or not, and makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 299.

The *Schlup* standard is an exceedingly high burden to satisfy and thus only permits review in "extraordinary" cases. *House v. Bell*, 547 U.S. 518, 538 (2006); *see also Schlup*, 513 U.S. at 327–29. Further, a petitioner's actual innocence claim "'does not by itself provide a basis for relief.'" *Teleguz v. Pearson*, 689 F.3d 322, 328 (4th Cir. 2012) (quoting *Coleman v. Hardy*, 628 F.3d 314, 318 (7th Cir. 2010)). Instead, a petitioner's "claim of innocence is . . . 'a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup*, 513 U.S. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

Hawkins offers no new, reliable evidence to support his actual innocence claim. In ground A, Hawkins asserts that the Commonwealth elicited false testimony from Moye. ECF No. 1 at 35–37. The basis of this argument is that Moye's trial testimony differed from Moye's written statement introduced by the Commonwealth at trial. *Id.* Any inconsistencies between these two statements were readily available to the trial court, and are not new evidence. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007) ("AEDPA . . . requires federal habeas courts to presume the correctness of state

courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'").

Hawkins also alleges in Ground A that prosecutors violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing the identity of certain witnesses. ECF No. 1 at 37–38. The basis of this claim is a memorandum from one of the responding officers to the investigating detective, referencing, but not naming, witnesses and what information they provided. *Id.* at 60. According to the memorandum, one of the witnesses stated to the officer that the gun was a two-shot revolver. *Id.* According to Hawkins, neither Gatson nor Tiffany Hodges ("Hodges," also present at the scene), testified that the gun was a two-shot revolver, leaving Hawkins to speculate that the witnesses referenced in the memorandum were separate witnesses of which Hawkins had no knowledge. *Id.* at 37. Hawkins does not argue that the Commonwealth failed to disclose the memorandum, but argues merely that it failed to disclose the identity of the witnesses. Thus, the memorandum is not new evidence. Nor can Hawkins now say with any certainty that the referenced witnesses are not witnesses he was already aware of, namely Gatson and Hodges. Here, again, the Court notes that a petitioner's "claim of innocence is . . . 'a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup*, 513 U.S. at 315 (quoting *Herrera*, 506 U.S. at 404)). The *Brady* violation claim is Hawkins' otherwise barred constitutional claim, but Hawkins has presented no new evidence in this claim that demonstrates actual innocence such that he can pass through that gateway.

Ground B alleges that the Commonwealth committed a Confrontation Clause violation under *Crawford v. Washington*, 541 U.S. 36 (2004), when it introduced the written statement of the victim after the victim had concluded his testimony. ECF No. 1 at 38. This is not new

evidence, as the statement was clearly available to the trial court. Once again, this is an otherwise barred constitutional claim which cannot be considered until Hawkins has come forward with new evidence to support a finding of actual innocence.

Ground C alleges that Hawkins' counsel was ineffective for failing to conduct an investigation with respect to grounds A and B, and for leaving case notes in a court file which outlined possible examination questions. *Id.* at 38–39. This is not new evidence.

Ground D alleges that the trial court "unfairly restricted the defense's cross-examination of a key prosecution witness." *Id.* at 39–40. Ground E alleges that counsel was ineffective for his failure to object to this denial. *Id.* at 40. Neither of these grounds presents new evidence. Further, with respect to Hawkins' objections to how the trial court conducted its proceedings, the Court notes the reluctance of federal courts in interfering with state court proceedings and the Supreme Court of Virginia's statement that "[a] petition for a writ of habeas corpus may not be employed as a substitute for an appeal or a writ of error." *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974).

Ground F once again alleges that introduction of the written statement was improper, and further, that it amounted to prosecutorial misconduct. ECF No. 1 at 40–41. This contention does not rely on any new information that was not available to the trial court.

Ground G alleges that trial counsel was ineffective for failing to object to the introduction of Moye's written statement, failing to "develop his promised story," failing to independently investigate the crime scene or an alternative suspect, and failing to get the 911 call transcribed. *Id.* at 41–44. Hawkins does not provide any new evidence that trial counsel may have uncovered had he undertaken the requested investigations. *See United States ex. rel. Cross v. DeRoberts*, 811 F.2d 1008, 1016 (7th Cir. 1987) (stating that allegations of ineffective assistance centered on

8

a supposed failure to investigate must indicate "what information would have been obtained from [the] investigation and whether such information . . . would have produced a different result"). Ground G provides the Court with no new information establishing actual innocence.

Ground H alleges that trial counsel was ineffective because he failed to interview and present testimony from two police officers and failed to effectively cross-examine two other officers. ECF No. 1 at 44. This is not new evidence.

Ground I alleges that appellate counsel was ineffective in "fail[ing] to disclose that her office was actively representing" Moye, creating a conflict of interest. *Id.* at 45. Hawkins does not state in what capacity appellate counsel was representing Moye, whom he refers to as "the Plaintiff," but any conflict of interest on the part of Hawkins' counsel does not establish actual innocence sufficient to satisfy the *Schlup* gateway standard.

Ground J alleges that the Commonwealth denied Hawkins' right to reciprocal discovery by failing to disclose that Moye was being investigated for another felony, and trial counsel was ineffective for failing to independently investigate Moye. *Id.* at 45. Hawkins does not explain how the fact that the victim was being investigated for a separate offense leads to the conclusion that he, Hawkins, is actually innocent. There is no new, reliable evidence of actual innocence in this contention.

Ground K alleges that the accumulation of errors violated Hawkins' due process rights. *Id.* at 45. This is a legal argument, not new evidence of innocence.

Ground L alleges that trial counsel was ineffective in failing to challenge the inconsistencies in the Commonwealth's evidence. *Id.* at 45–49. As with Ground A, any perceived inconsistencies in the Commonwealth's evidence were before the trial court. *See Johnson v. Norris*, 170 F.3d 816, 818–19 (8th Cir. 1999) (actual innocence standard not satisfied

9

where "[m]uch of the evidence," including witness' memory loss and the potentially conflicting testimony of witnesses, "is not new and reliable"). There is no new evidence presented in this ground.

Grounds M–O challenge the sufficiency of the grand jury indictment, allege that the trial court's order (presumably the order of conviction) was void *ab initio* due to a "procedurally nonexistent" grand jury indictment, and allege that counsel was ineffective for not objecting to the indictment or arguing that the order was void. ECF No. 1 at 49–53. Hawkins does not elaborate on how the grand jury indictment is procedurally nonexistent, stating only that it "either does not exist or was defective procedurally." *Id.* at 49. The Court has reviewed the indictment, received from the attorney general's office, and found no apparent defect. Faced with only this bald statement from Hawkins that the indictment is infirm, with no specific explanation as to why, the Court declines to hold that Hawkins' conviction was void.

Ground P alleges that Hawkins was "convicted on the basis of facts different than those facts on which the charges were based." *Id.* at 54–55. Specifically, Hawkins alleges that the detective's statement to the state magistrate differed from his testimony at trial. *Id.* at 54. Further, Hawkins alleges that counsel was ineffective for not questioning the variance between the sworn statement and the testimony. *Id.* at 54–55. Once again, Hawkins provides no indication that this evidence was not available at the time of trial, and it is accordingly not new evidence.

Ground Q alleges that the grand jury was selected in a racially discriminatory manner in violation of *Vasquez v. Hillery*, 474 U.S. 254 (1986). *Id.* at 55. Hawkins provides no support for this claim, and even admits that he does not know the race of the grand jurors. *Id.* This is not new evidence.

Ground R alleges that trial counsel was ineffective for failing to impeach the detective's testimony as inconsistent with that of the statement he gave to the magistrate and his testimony before the grand jury. *Id.* at 55–56. Hawkins also alleges that trial counsel was ineffective for not obtaining the grand jury transcripts. *Id.* Hawkins presents no new evidence in this claim.

Finally, Ground S alleges that trial counsel was ineffective for failing to investigate statements one witness allegedly made to Hawkins' mother that the trial was "about money." *Id.* at 56. Hawkins' mother previously testified about these statements. *Id.* at 31–33. This is not new evidence.

Because Hawkins has not brought forth any new evidence, but has instead repackaged the record as presented at trial, combined with various allegations of error on the part of the court and counsel, actual innocence does not provide a gateway under the demanding *Schlup* standard.

As for the possibility of equitable tolling due to hardship, "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. On this point, Hawkins argues that he is *pro se* and needed time to research the legal issues. ECF No. 1 at 13–14. "[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (citing *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015 (8th Cir. 2003)). Equitable tolling is inapplicable here.

Because Hawkins has not presented any new and reliable evidence which would make it so that no reasonable jury could find him guilty, his claim of actual innocence does not excuse his failure to comply with the federal statute of limitations.

## B. *Exhaustion and Procedural Default*

Respondent next argues Hawkins' petition is procedurally defaulted. ECF No. 7 at 8–11. In addition to ensuring that the statute of limitations has been complied with, the Court must also confirm that Hawkins exhausted his remedies in state court before the Court addresses the merits of the habeas petition, *see* 28 U.S.C. § 2254(b), and that the claims were not procedurally defaulted in state court. *See Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998). The exhaustion doctrine ensures that state courts have a meaningful opportunity to consider allegations of constitutional violations before presentation of such claims to a federal court. *Rose v. Lundy*, 455 U.S. 509, 515 (1982). The exhaustion requirement is satisfied when the "essential legal theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court." *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991). Exhaustion may be achieved either through direct appeal or in post-conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Under this doctrine, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). "A state procedural rule is adequate if it is regularly or consistently applied by the state courts." *McNeill v. Polk*, 476 F.3d 206, 211 (4th Cit. 2007) (citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)).

Simultaneous exhaustion and default "occurs when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). These claims are simultaneously exhausted and procedurally defaulted, because any attempt to raise the claims before the Supreme Court of Virginia now would be barred as a successive petition under Virginia Code § 8.01-654(B)(2). *See also Dorsey v. Angelone*, 544 S.E.2d 350, 352 (Va. 2001). Under *Teague v. Lane*, 489 U.S. 288, 297–98 (1989), this Court cannot consider claims that would be procedurally defaulted in state court if raised now.

If claims are not raised on direct appeal, they generally cannot be raised in state habeas proceedings. *See Slayton*, 205 S.E.2d at 682 ("[a] prisoner is not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction."). Here, grounds A, the Confrontation Clause aspect of ground B, grounds C–S, were all raised for the first time in Hawkins' state habeas petition. These claims were not specifically raised before the court of appeals, where Hawkins argued that the evidence against him was insufficient to support a conviction and that the admission of Moye's written statement was improper. ECF No. 7-2. Such grounds, with the exception of ground I and M, are accordingly procedurally defaulted for this reason.[6]

The only ground of Hawkins' habeas petition that he raised on direct appeal was the portion of ground B challenging the admissibility of Moye's written statement. The Court of Appeals of Virginia ruled that, because petitioner's counsel failed to object, that argument was

---

[6] Ground I alleges ineffective assistance of appellate counsel, and thus could not have been raised on direct appeal. Ground I is still barred by the statute of limitations. Ground M is a jurisdictional attack, which will be addressed in more detail below.

waived under Virginia Supreme Court Rule 5A:18.[7] ECF No. 7-2 at 5–7. "In general, 'a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Burket v. Angelone*, 208 F.3d 172, 183 (4th Cir. 2000)). Virginia Supreme Court Rule 5A:18 is an independent and adequate state ground for denying relief. *Olajuwon v. Johnson*, No. 3:08cv268, 2009 WL 2434882, at *4 (E.D. Va. Aug. 6, 2009) ("Rule 5A:18 constitutes an adequate and independent ground for denying a claim.") (citing *Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000)). Accordingly, the portion of Hawkins' petition alleging the improper admission of Moye's statement is procedurally defaulted.

Hawkins argues that the trial court's conviction was void *ab initio*, which "can be attacked 'by all persons, anywhere, at anytime, or in any manner." ECF No. 1 at 50 (quoting *Wright v. Commonwealth*, 667 S.E.2d 787, 794 (2008). Hawkins is correct that a sentence that is void *ab initio* can justify using the ends of justice exception. *See Gordon v. Commonwealth*, 739 S.E.2d 276, 278 (Va. 2013) ("'Denying [a defendant] his liberty on the basis of a void sentence would impose a grave injustice upon him [, and t]he application of the ends of justice exception is, therefore, fully justified.'") (quoting *Charles v. Commonwealth*, 613 S.E.2d 432, 435 (Va. 2005)). However, as stated in the discussion of Hawkins' grounds M–O, Hawkins has not

---

[7] Virginia Supreme Court Rule 5A:18 provides:

> No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to preserve the issue for appellate review.

Va. S. Ct. R. 5A:18.

provided any factual basis for the claim that the trial court's order was void, stating only that the grand jury indictment, "either does not exist or was defective procedurally." ECF No. 1 at 49. The Court observes no defect in the indictment, and Hawkins' mere statement does not excuse his procedural default.

Actual innocence, using the *Schlup* standard, can excuse procedural default by demonstrating a "fundamental miscarriage of justice." *Schlup*, 513 U.S. at 324. As discussed in the previous section, however, Hawkins has not satisfied this standard.

Finally, Hawkins has not shown that an "objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Again, Hawkins' only argument on this point is that, as a *pro se*, he needed more time to conduct research. This is not considered a factor external to the defense.

For these reasons, Hawkins' petition is procedurally defaulted.

### III.   RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that respondent's motion to dismiss, ECF No. 5, be GRANTED, and the petition for a writ of habeas corpus, ECF No. 1, be DENIED and DISMISSED WITH PREJUDICE.

### IV.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits

an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based upon such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Robert J. Krask
United States Magistrate Judge
Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
January 11, 2018